312-0269, Camelot Mann v. Eppley by Lesley Rosen and Shuhawk in Texan v. Eppley, Daniel Kumagali v. Roy Mann, appellant Christopher Boling. Thank you, Mr. Boling. Good morning. Good morning. Madam Presiding Justice, Your Honors Counsel, and may it please the Court, my name is Christopher Boling. I'm here on behalf of Roy Mann on a limited issue dealing with a word of attorney's fees in the trial court in relation to a matter that this court had previously decided. The issue before the court is whether the award of $15,300 to my client, Roy Mann, and the award of $86,354 to the appellee, Camelot Mann, was erroneous. It is our contention that that award was erroneous. It was erroneous for one primary reason. It's fundamental, according to all of the cases that all of us have cited in these briefs, that if there is no ambiguity in a trust, in a matter for trust construction, there can be no attorney's fees awarded. We cited the Winota case. They have cited a number of cases. And every one of those cases is consistent with the holding that where there is an ambiguity, attorney's fees can be awarded. And where there is no ambiguity, attorney's fees should not be awarded. And, in fact, some of the cases cited for the appellees was reversed the award of attorney's fees where the court found no ambiguity existed. The issue in this case is when the partition action was tried, the parties stipulated and agreed that there was no ambiguity. This court, in its opinion, that matter was appealed to this court on the trial court's construction of the trust. And this court made a specific finding that the parties had so stipulated and that, again, no ambiguity existed in the trust. In fact, the dissent by Justice Carter to this court's opinion said, I disagree. I think there should be a finding of ambiguity in the matter set back for a hearing on the issue of that ambiguity. So the law of this case, as we have cited, is that no ambiguity exists in this trust. We can't avoid that fact because the parties agreed, number one, and the trial court and this court agreed with the parties' agreement. When the case went back, my client, Roy Mann, filed a petition for fees. He did so on the basis that he was representing the trust because then he was sued as trustee in the partition action. And in this court, the trustee who was then in place did not participate. Roy's position was that the trust should be construed as the trial court did in such a manner that would continue the trust in place and in existence. Was Roy the trustee when this action was brought? When this action was brought, Roy was the trustee. That's correct. He was later removed as trustee. And when he was removed, when was he removed? That was 2005. That was 2005. That's correct, Your Honor. Okay. And so he's not seeking any fees after 2005? He sought fees because he was in the place of the trustee as the trustee itself filed no briefs in this court regarding the issue. So yes, he did seek fees as acting in the place of the trustee and in defending the trust in both the lower court and this court. And that was the basis of his petition for fees. Okay. But that wasn't the basis he was awarded fees. He was apparent because when we asked the court to clarify, the trial court, why are you awarding fees to the parties, the court said it was adopting the position of the appellee, Pamela Vann, Ms. Rosen's brief and memorandum, and that entire brief dealt with the issue of the construction of the trust. Quite frankly, if that was the basis upon which Roy's fees were being awarded, which was not the basis upon which they were sought, and one can certainly take the position that he is in error in seeking fees on the basis that he was defending the trust, but that was never contested in the lower court by the appellees, but apparently not considered by the trial court. Okay. It's kind of a circular argument. But the fact of the matter is that although he was ostensibly acting as the trustee, he was not. That's true. Legally, he was not, but he was in the position of defending the trust. Okay. And so what is the legal basis for awarding fees to him? The legal basis is that he was defending the trust and asking for the continued existence of the trust in his position in the court. And it's an equitable, it becomes an equitable argument more than a legal argument. I grant you that. But again, that issue, and I think, quite frankly, on the basis that the trial court granted fees, the award to Roy should be reversed, the entire award of fees should be reversed at this point. Because? All fees were based on the petitions of Pamela. All fees? On the basis alleged. According to the trial court, he granted the fees based upon the arguments made by Pamela. So I concede that if that's the basis that Roy was awarded fees, that was just as much an error as the fees awarded Pamela. Okay. Now just let me take it one step further. Sure. The appellees are arguing that your client is collaterally stopped at this point from making the argument. If the basis for the award of fees to Roy was not that he was the trustee, but that he was also seeking construction of the trust, why doesn't their argument work? Because that's inconsistent with the position that Roy sought fees. It's inconsistent with the position we took in the trial court regarding fees, and Roy has never taken the position that fees should be awarded because there was an ambiguity in the trust. And that wasn't the reason he sought fees. And, in fact, in the trial court, he made the proposition that if his fee petition was what was triggering this, he would withdraw his fee petition. But the point remains he is not collaterally stopped because he has never argued inconsistently with what he's arguing today. We filed briefs in opposition to the granting of fees. We objected to the granting of fees. And the fact that the court erred in granting him fees on the same theory doesn't stop him from being in this court and saying that theory was wrong. May I ask you to pause? Counsel, at the table, it's very distracting to me because you're in my line of vision when I see facial reactions, and please, if you could refrain from that. And I'll require counsel to do the same when you're in front of me. The apology accepted. Please proceed. Okay. Can I just do one more follow-up question? Sure. After Roy was removed as trustee, he continued to litigate. You have said that that was because the real trustee, the replacement successor trustee, was not doing anything. But he continued to litigate when he was no longer trustee. Correct. That's correct? He did because he also had an individual interest in assuring his position was litigated, and his position individually was consistent with defending the trust, perhaps incidentally, but it was in fact consistent with defending the trust, was that the trust should remain in effect and that the grandchildren of Glenn and Mabel Mann had an interest in this trust. That position was upheld in the trial court, and this court reversed it, and that's pay your next one, take your chance, and that's exactly what happened. So that part was done with, and Roy lost ultimately in this court on that question. At the same time, this court found no ambiguity in the trust. Right. And I understand, but this is fees. This is fees. That's correct. And the only way you get fees, as we've argued, there were two possibilities because the fee petition of the Appellees was filed in the partition action, and at first I thought they were seeking fees as part of the partition act. That's been conceded in their response brief that the partition act is not the basis for their fees. The only basis is for the construction of the trust, seeking fees to reimburse them the cost of doing that. If that's the only basis, it's our argument that the entire fee award is in error, should be reversed, and the court, on the basis that there's no ambiguity. We don't think we're a stop. I don't think my client is a stop because he never sought fees on the theory that there needed to be a construction of the trust. He was certainly satisfied with the position of the trial court, although that was not where he ended up. But he never sought fees on that basis, objected when fees were sought on that basis, and that's why we're here today, because a fee award was made on a basis that simply is contrary to the law of this case and contrary to the decision of this court, the decision of the trial court that exists prior, and contrary to existing law regarding trust construction. The final issue we raise is just a matter of this is an issue of pure equity in front of the court. The court's here because of its equitable jurisdiction. The trial court's equitable jurisdiction. If you look at the history of this case, as included in the record, Roy Mann was denied fees for his services trustee. He was denied attorney's fees for the extensive accounting action trial that took place. And then when the fees are awarded, his counterpart is awarded $86,000 in fees for exactly the same process for which he was ordered $15,000 in fees, of which $2,600 was transcripts, which it was our understanding the trust was going to pay for from day one, but we included in the fee petition. The transcripts were what the trial court used in its underlying decision. But regardless of that, it's our position that the law of trust administration is clear on the question, if there is no ambiguity, no fees can be awarded. And based upon that, we are asking this court to reverse the award of fees in the trial court and asking the matter be remanded with that direction. I have a procedural question for you. If the fee award is reversed as to the fees that Pamela received, is there a cross appeal asking us to reverse the fees that your client received? There is not. And so what is your position, because I try to be consistent. And I do too. And I appreciate the court. My position is that the entire fee award, the judgment awarding fees should be reversed, and that includes the matter regarding Roy's fees. Because, again, we're here as a matter of equity. Even though the other side has not crossed appeal. I understand. All right. I accept that. Thank you. Yes. Thank you. Thank you. Thank you. And, Ms. Rosen, trust me, what happened before is gone, and I do the same thing because I get very involved in the cases. I'm very sorry. You just happen to be in my line of vision. Thank you very much. Well, today I have heard some new arguments by Mr. Boland. This is the first time he's asked for his fees to be reversed, and that's a very interesting concession on his part because you can't ask for something in the trial court, get it, and then say, oh, I made a mistake. But that's pursuant to my question. No, it was before. It was before. I took notes. That was at the very end. He said it earlier. He said, as a matter of equity, it was wrong because he said it was wrong. And I think that the best case on that is actually Collins versus Roseland, which I cited, I believe, on page 15 of my brief. You can't introduce something and then come back and say, oh, I was wrong. I got what I wanted, but I was wrong. That's not allowed. And that's why I cited Outen versus Logan Landfill. In the other case, he's taking a very inconsistent position. His argument that Roy sought fees under a different theory doesn't make any sense to me. I've never understood it. He sought fees. In his brief, he says in his petition that the fees were expended for the benefit of the trust. Justice McDade was quite right. By the time the fee issue arose, it was 2011, six years after Roy had been trustee. He was asking for fees for himself. He was fighting this case always for himself. This court construed the trust. As this court said in its opinion, it's at page 9 of your Rule 23 order. It appears in Roy's appendix at page 33 or the record of page 16. This court had to construe the trust. We argued that there was no ambiguity, but that's not the test. We had argued that there was no ambiguity. I remember distinctly being here about three years ago, and I was asked by whoever was sitting where Justice Holdren was sitting, are you arguing that this is ambiguous? And I said, that's a very good question, and I could see why you would ask that. And it was probably my question. Oh, okay. If it was a good question, I'm certain it was mine. Go with it. But we had argued that it wasn't ambiguous, but the trust definitely needed it to be construed. Everybody agreed to that. You agreed to that, that it had to be construed. Judge Carver said the land could be partitioned. Judge Wenselman said it couldn't be partitioned. This court said it could be partitioned. And it was all about the grandchildren. It was a question of law. And this court had to construe the trust to determine it. The test of ambiguity is not whether it's hard to understand. It's not just the test of ambiguity doesn't mean what he thinks it means. And the case is, can you understand what the trust says? Now, do you agree with it? And in this case, this court found as a matter of law that the trust said that the grandchildren were not beneficiaries of the trust, so that the land could be partitioned and should be partitioned. This case has been going on now 16 years. It's incredible. And, in fact, maybe today the deeds will get, today, just today, we may have the partition accomplished. It's taken this long since the last ruling. But it had to be construed because people disagreed on the meaning. And that's what the case law says. Isn't it true, though, it had to be construed because of the partition action? It had to be construed because of the partition action, yes. But the two matters were intertwined. They were heard by the same judge, by Judge Carr. They were consolidated. And then, ultimately, after Judge Wenselman decided the partition and it came back to him after your court, the judge said, I'm going to send some of this to Judge Kick. He just chose to send some of it. He said, I'll finish this part up, but he's doing everything else. So the cases have always been intertwined. And, in fact, this court had a problem with the record because it didn't include everything, and it needed to all be included. But the case law, I think, is very clear that when a trust has to be construed, the costs of litigation are borne by the estate. And the criterion is whether an honest difference of opinion exists. And there's certainly an honest difference of opinion. I mean, three judges had, well, three sets of judges. You had one, well, actually, your court had two views, and the trial court had two views because Judge Carr had one and Judge Wenselman had another. So you can call it ambiguous or not, but that's really not the – it's a red herring to me. It's not the criterion. We did not seek fees due to the fact there was an ambiguity, but it was because of construction. And previously, my opposing counsel has argued that it really wasn't even about construction, and now he says it was about construction, but he's narrowed his argument and focused exclusively on that there's no ambiguity. But he used to argue that construction was just incidental to this court's opinion. But I think the construction was the entirety of this court's opinion. That's all it was here, was to construe the trust to determine whether the grandchildren were intended beneficiaries and whether the land could be partitioned. When you construe something, are you implicitly saying it's ambiguous? No, because ambiguous has a more precise meaning than that. Because you decided as a matter of law that it was – you read it and you said this is what it means. So there's a disagreement, but that doesn't mean it's necessarily ambiguous. Ambiguous means we can't tell what this guy meant. It's not clear, and we're going to have to take extrinsic evidence. And previously, we didn't want to go that route. We wanted just the court to say, here it is. As a matter of law, tell us. Counsel, that's one minute. So then you sought the fees because it was ambiguous? No, we sought fees because we were – everybody in this case was seeking fees for construction of the trust. There was an honest disagreement, but technically it was deemed not ambiguous. But it was an honest disagreement, and it was a construction. That's all I have unless you have more questions. Thank you very much. Good morning, counsel. May it please the Court, Daniel Fumagalli. I am the fee petitioner for my firm, Chirac & Texan. I was a trial attorney in the case up until sometime in 2011. At which time Ms. Rosen stepped in. I don't want to repeat – I don't think the Court wants me to repeat the arguments that Ms. Rosen recited, although obviously our arguments dovetail into each other. The one aspect of Appellant's argument that affects us, me more than – my client more than Hamlet, per se, is this notion that Appellant raised of injecting the time, the effort, et cetera, that the Mr. Mann as trustee spent. And that was not taken into account by the Court when it made – Judge Kick – when it made its determination on the fees. That coupled with, I guess, the size of the award that was granted to the appellee versus the appellant. As to that first notion, Your Honors, to me it's very clear that Mr. Mann was removed by the order of 2005. Technically he was allowed to, I guess, be a caretaker until a replacement trustee was found or volunteered and actually took over the office. And that didn't take place until sometime in 2007. But in the interim, and even after a replacement trustee was appointed, we should acknowledge Mr. Mann did take actions as though he was a full-blown trustee. Checks written to a law firm. Checks written for things that should have not come out of the trust. A large payment to the trustee directly. This is all what the Court took umbrage with when it made that – when it issued the order in April 2009, saying, no, you're not going to get, as a trustee, you're not going to get any fees. You don't deserve them. You've disregarded, I'm paraphrasing, but you've disregarded the orders of this Court. Didn't use the word unclean hands, but I would submit to this Court that that's really what was going on with the Court, the trial court at that time. And as a matter of equity, the Court was allowed to do that. So I think that argument that was raised in the briefs is a complete red herring. In terms of other things that were raised specific as to us, yes, ours is $72,000 as opposed to the, and I may be wrong slightly, and it's $15,000, I believe, for the Appalachian. We were the one, I would submit to the Court, that was guarding the hen house, guarding the flats in the hen house. We were the one that had to be more vigilant because of the very nature of what was, looking over the shoulder of the trustee to make sure he was doing what the Court was telling him to do. I think by definition alone in that, we would be incurring more time and fees to do that. When those fees began, the $76,000, what date did they, what was the first date? They began back in as early as 2000, Judge, and to address perhaps what the Court is getting at, there were different issues going, I mean these cases were merged together for quite some time. The accounting action, which was basically the action to remove Mr. Mann as the trustee, and the partition case. And early on after the filing of the partition case, they were treated basically as a combined case. What we did in the petition was cull through that time and in a good faith manner say, these are the matters that were just geared towards construction of the trust, which I would grant to the Court, sometimes does relate to the partition action per se, the appointment of commissioners and whatnot. But it's not as though that fee petition takes all the time that was incurred since 2000. It distills out, it culls out the time that was not related to the construction of the trust. I'm trying to develop a timeline in my feeble brain. And Roy was the trustee up until 2005. Did he retain your law firm in 2000? Well, not us. As trustee. We were on the other side, Judge. We were Ms. Mann. Right. So why isn't she responsible from 2000 until the date the partition action took place? What was the date of the partition? Well, the partition action, Judge, was 2000. Okay. So if the partition action was not well-founded because there wasn't an ambiguity, why shouldn't she be responsible for those fees? It all comes down to whether there was, as the courts define, ambiguity. I agree with the court. And why doesn't our decision control that issue? I think your decision, you mean from 2005 or 2010? Yes. Control the issue of ambiguity? Yes. Because what the courts say, and some of this is my interpretation, if there's a provision that is obviously unambiguous and somebody just weighs in on the litigation and then is there waiting at the end with a wheelbarrow or whatever to collect the money and say, well, I weighed in and I helped the court. The cases that we cited, one of the cases that Appalachian cited, the cases too. In the trial court, the court says, this isn't ambiguous. What are you talking about? It's taken up on appeal. And the appellate court agrees it's not ambiguous. We're not going to allow fees, the one case. We're not going to allow fees in this situation. But our case is much different because there was uncertainty both in the trial court judges and with this court. All right. I understand your point. And the honest difference of opinion is what defines ambiguous. So it's nice to bandy about the word ambiguity or ambiguous, but the Huer case, the Northern Trust Huer case, talks about what is it. It's an honest difference of opinion. At the end of it all, somebody can say, here's exactly what it means. It's very clear to me or us. But leading up to that, and I think in this case there was, an honest difference of opinion which was hotly contested. So all this talk about ambiguity, that was my question to Ms. Rosen. Is it one and the same or different? Honest difference of opinion, does that imply ambiguity? In my view, judge, ambiguous is a much narrower, you can look it up in Webster's too, I'm not trying, it's a much narrower definition than the courts have. I'll just harken back to the Huer case. Honest difference of opinion. And I would say a non-honest difference of opinion where if you have a bank who says, we've got this trust and we've got party A and party B, we don't want to be sued by either of these folks. Although we think this means exactly what it is, we're going to do a petition to construe the trust because we don't want the size to come after us. Is that an honest difference of opinion? Probably not. Unless the panel has any other questions. Thank you very much. Mr. Bowman. I never thought that I would be arguing or hearing, in essence, that the term ambiguous is ambiguous. I don't think the term ambiguous is ambiguous. Trial courts, appellate courts, the Illinois Supreme Court have used that term for years and years and years. It is a term of argument. The question is, is there an ambiguity in the trust? The answer is, by their concession and mine in the trial court, by a finding of this court, no, there is no ambiguity. Where there is no ambiguity, all of the cases cited by both sides says when there's no ambiguity, there's no fees to be awarded. Underscoring that is, there has never been an action filed in this case to construe this trust. The partition action was filed, and as a part of the partition action, the court had to make a determination as to whether the grandchildren had a right as contingent beneficiaries, or they had no right. Trial court said they did. This court said they didn't. And that's the end of the issue. But that doesn't say there is an ambiguity that raises to the level of a legal determination of ambiguity because we've all said there isn't an ambiguity. So no matter how bad you beat it, it's still laying on the floor, and it's not going to get up. It's an ambiguity, and once there's a determination of no ambiguity, there is all of the cases say that no fees should be awarded for trust construction. Final issue is, I don't believe that the fact that Roy Mann asked for fees in the lower court on one theory and they asked for it on another theory to which Roy Mann objected in any way waives his right to be in this court objecting to the award of fees. It's noted that if Roy Mann had sued on a theory of negligence, and they countersued on a theory of willful and wanton, and we object and contest that issue and are before the court on different theories, we didn't agree to their theory, never have agreed to their theory, never have agreed to the basis upon which they sought the fees. And if you object and follow through and are consistent in your objections, I submit to the court, there cannot be an estoppel, there cannot be a waiver, there cannot be an invited error. That's not what this case is about. This case is about Judge Kick failing to look at the case law that was provided to him and making a decision awarding fees when there was no legal basis to do so. Thank you. May I just pierce your brain a little bit as to Justice Holdridge's question? Yes. What is an ambiguity? And as I interpret your argument, what you're trying to say is an ambiguity is not defined as a simple disagreement. Absolutely, I agree. Because when people, my children, can fight over a word or a term or a directive by me, and that doesn't mean that what I said was unclear. I would stipulate that what you said was not unclear. And in this case, if I'm not mistaken, because I was involved in the last appeal, we have siblings, is that correct? That's correct. That are fighting over something they both want. Or believe they're entitled to. Fighting for a result that they both want. Correct. And so the fact that they may disagree doesn't necessarily, in your view, mean that there is an ambiguity. That's correct. And I think in the view of what the parties had agreed and what this court and the trial court found, there is no legal ambiguity, and that's what's required in order to award a case. All right. I think I understand your argument. Thank you. Any other questions? Thank you. Appreciate it. We will be taking the matter under advisement. Normally I predict that we'll be rendering a decision without a lot of delay. However, we have a lot to talk about in this case. A long history of litigation. We will do our best to get a decision out quickly. As quickly as possible. We'll stand in recess for a panel change.